On the Merits.
I.
The plaintiff claims $10,000 as damages, of tne defendant, on the ground that, while traveling on one of the trains of the railroad company as a passenger, he was ejected violently therefrom by the conductor, and in violation of its contract of safecarriage. The case was tried by a jury, who rendered a verdict in plaintiff’s favor for $8000. From the judgment thereon based, the defendant has suspensively' appealed.
*883 The facts appertaining to the ticket on which the plaintiff claimed, the right to ride on defendant’s train are as follows, viz:
On or about the 24th of January, 1889, an agent of the railroad company at Mermentau station, in the parish of Acadia, this State, sold to one George Y. Snoffer a 1000-mile “ commutation ticket,” which entitled the members of the firm of G. Y. Snoffer & Co. to travel on the lines of railroad of the Southern Pacific Company in Louisiana, upon the terms and conditions mentioned on said ticket, and especially on the condition that they signed their names upon the reverse thereof before using it.'
The ticket is couched in the following terms, viz:
“ Southern Pacific Railroad Company 1000-mile commutation ticket.
“ For the exclusive' use of Mr. G. Y. Snoffer & Co. (5) 'Good only when stamped on the back by the selling agent, and then good only over the Southern Pacific Company’s lines in Louisiana.
(Signed) “W. C. Watson,
“3762. G. P. andT. A.”
On the reverse is found the stamp of thé selling agent across tha face of the following agreement, viz:
“ This ticket is good only for persons named hereon, and when presented for or by any other will be taken up and returned to the general ticket office. * * * * * *
The above conditions fully understood and accepted. Good only over Southern Pacific Company’s lines in Louisiana.
(Signed) “ G. Y. Snoffer.”
In the defendant’s answer it is specially averred “ that the signatures of the members of the alleged firm were never placed on said ticket as required by the terms of the ticket, * * * and consequently no members of the firm ever became entitled to travel on said ticket.” And the company further avers that “ the plaintiff never was a member of the firm of G. V. Snoffer & Co., and therefore he never was entitled to travel on said ticket, even if it had been properly signed.” It further avers “that there never was such a firm as G. V. Snoffer & Co., and, hence, the obtaining of such a ticket involved a deception and imposition upon defendant, and conferred no right to transportation upon any one.”
*884 In this, as in all like eases, the onus of proving the performance of all the essential conditions of a contract of carriage of a passenger is on the plaintiff; and, claiming rights of a passenger under a “ commutation ticket,” the .burden is on him to show affirmatively that all of the essential conditions of such a contract were fulfilled. And it was, more particularly, his duty to show the existence of the firm of G. V. Snoffer & Co., and that he was a member of it. Failing-to discharge either one of these requirements, his case is not made out, and the defendant is entitled to judgment.
Now, it is a fact admitted by the plaintiff that, when he and his partner entered the defendant’s train on the night of January 25, 1889, it was commutation ticket No. 8752. — the one described above —that was tendered to the conductor, on his calling for his (plaintiff’s) fare to Morgan City.
Therefore, we are to determine what is the true meaning and import of that part of the contract on the reverse of the ticket, which declares that “this ticket is good only for persons named hereon,” etc. This is apart of the contract entered into by the purchaser, and it evidences one of the obligations undertaken by him in favor of the company, and it constitutes one of the conditions on which the ticket was issued. The only person named thereon, as shown above, is G. Y. Snoffer, and not G. V. Snoffer & Co.
In the circular letter of instructions issued by the general passenger and ticket department of the defendant company, and addressed to agents and conductors, under date January 8, 1889, prior to the-sale of a ticket to the G. V. Snoffer, we find the following, viz:
“ Instructions to agents and conductors in Louisiana, with reference to the sale and use of commutation tickets, superseding all previous instructions in conflict therewith. * * *
“They may be sold to firms, when each member constituting same affixes his signature to the conditions as stipulated on the back of the ticket.
“It will be the duty of conductors to refuse for passage any of these tickets that have been issued subsequent to date of this circular, confer ry to requirements as herein set forth, and to the conditions stipulated on the back of such tickets.”
(Signed) ' W. O. Watson,
Gen. Pass, and Ticket Agt.”
*885 Receipt of copy of this circular was duly acknowledged on the 10th of January, 1889, by the local agent who sold the ticket to Snoffer.
As the ticket in question is not signed by each member of the alleged copartnership of G. V. Snoffer & Co., but by G. Y. Snoffer alone, the conductor’s refusal to receive it for the passage of plaintiff appears to be justified. In addition, the local agent states as a witness, that the instructions of the company were brought home to the purchaser at the date of sale of the ticket to him.
This, however, is denied by Snoffer as a witness. But the fact remains that in the body of the ticket is found the firm name of G. V. Snoffer & Co., while in the contract on the reverse is the name of G. V. Snoffer alone, and this would appear to confirm the correctness of the agent’s testimony. Had Snoffer carried into execution his own original idea, he would have, doubtless, signed the contract G. Y. Snoffer & Co. In this he was evidently restrained by the agent; otherwise the latter would have declined to stamp it, as he ■did.
But conceding, for the argument, that this construction of the contract is doubtful, and that the proof does not make it clear that Snoffer was duly advised of the company’s regulations in this regard, we feel quite clear that the plaintiff’s case must fail on account of the insufficiency of proof to show the existence of the partnership of'G. V. Snoffer & Co., as alleged, and of which he was a member.
Of course the burden of proving its existence was on plaintiff.
The averment is that this partnership was composed of G. V. Snoffer, L. A. Granier and George Crul or Himel. The only witnesses introduced on the part of the plaintiff in respect to the existence of the firm were the alleged members themselves; and their testimony is doubtful to say the most for it. There was not a single witness from Morgan City, where its business domicil was alleged to be, who was produced and stated that such a firm existed at that time, or had ever existed, of that name or composed of those persons. No books of any kind could be produced showing the dealings or transactions of the firm.. The partners did not appear to know what their respective interests in the business were. No settlement or division of profits had ever been made. There was no property assessed in the name of such firm, and no license had ever been issued to such a firm. If such a firm ever existed, its existence was *886 unknown to the public officials of plaintiff’s own parish. One of the alleged members of the company stated, over his own signature, and in the presence of witnesses, that G. Y. Snoffer was doing business on his own account, and had no partners. On the 1st of March, 1889, G. Y. Snoffer published a circular letter “to fish dealers,” in which he speaks of having located at Mermentau, and desired to notify his patrons and fish dealers generally, and signed it—
“ Respectfully,
“ G. V. Snoffer.”
A great many additional facts and circumstances might be detailed to the same effect; but it is unnecessary. The plaintiff has failed to make his proof even plausible on this salient point of his case, and he is not entitled to recover. Other points need not be considered. It would be the work of supererogation.
It is therefore ordered and decreed that the verdict of the jury and the judgment thereon based be annulled and set aside; and it is further ordered and decreed that the plaintiff’s demands be rejected at his cost in both courts.